# CINDY LOU WATROUS *v.* PAUL WATROUS
## (AC 28039)
## (AC 28839)

DiPentima, Beach and Robinson, Js.

Argued April 14—officially released July 1, 2008

*Keith Yagaloff*, with whom, on the brief, was *Ryan P. Barry*, for the appellant (defendant).

*Gary Traystman*, for the appellee (plaintiff).

*Opinion*

BEACH, J. These two appeals arise from the dissolution of the parties' marriage. In AC 28039, the defendant, Paul Watrous, claims that the court improperly (1) entered certain financial orders without evidentiary support, (2) ordered that the plaintiff, Cindy Lou Watrous, retain sole custody of the parties' minor child, (3) denied his motion for a continuance to obtain trial counsel[1] and (4) failed to ensure a fair and impartial trial. In AC 28839, the defendant claims that the court improperly (1) found him in contempt of court and established a purge amount on the basis of an erroneous arrearage, (2) was biased against the defendant and his father and (3) awarded the plaintiff attorney's fees. We agree with the defendant only as to his challenge of the court's financial orders in AC 28039 and therefore reverse, in part, the judgment of dissolution and affirm the judgment of contempt.[2]

The following facts and procedural history are relevant to our discussion. The parties were married on March 4, 1978. On September 14, 2004, the plaintiff filed a complaint seeking, inter alia, dissolution of the marriage, sole custody of the parties' minor daughter

---

[1] Although the defendant appeared pro se at trial, he was represented by counsel shortly following the court's judgment, in the postjudgment matters and in these appeals.

[2] In AC 28839, the defendant additionally claims that the court improperly denied his motion for modification of the alimony order because it erroneously found that (1) he was not disabled and (2) payments made to him by his father were income under the child support guidelines. Because we agree with the defendant as to the financial orders entered and therefore reverse the court's orders and remand this case for a new trial on that issue, we need not address those two claims that challenge the court's denial of his subsequent motion to modify those original financial orders.

and financial relief. On August 23, 2006, a trial was held, following which the court rendered judgment of dissolution. Pursuant to the terms of the judgment, the plaintiff was awarded sole custody of the parties' minor daughter with the defendant having reasonable visitation rights and being ordered to pay to the plaintiff $50 per week in child support and $325 per week in alimony to be terminated on the plaintiff's remarriage or the death of either party. The court also ordered the defendant to obtain medical insurance for his minor child and life insurance in the amount of $150,000, naming the plaintiff as irrevocable beneficiary, until his support and alimony obligations terminate. The defendant thereafter filed an appeal from the court's judgment (AC 28039).

On November 1, 2006, the plaintiff filed an amended postjudgment motion for contempt. She alleged that the defendant had disobeyed the court's orders by, inter alia, failing to pay alimony, child support and attorney's fees, and failing to obtain life insurance. A hearing was held on March 23, 2007, after which the court issued an order finding the defendant in contempt of its August 23, 2006 orders. The court also awarded attorney's fees in favor of the plaintiff in the amount of $2500.[3] The defendant thereafter filed a motion to reconsider the court's March 23, 2007 orders. On April 30, 2007, following a hearing, the court denied the motion to reconsider. The defendant then filed an appeal challenging the court's contempt and attorney's fees orders (AC 28839). Further facts will be set forth as necessary.

We first set forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in

---

[3] The defendant also filed a motion for modification of the alimony and support orders, which was denied by the court on April 30, 2007. In light of our decision as to the financial orders in the dissolution judgment, we need not address specifically the motion for modification of those orders.

domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Daddio* v. *O'Bara*, 97 Conn. App. 286, 291, 904 A.2d 259, cert. denied, 280 Conn. 932, 909 A.2d 957 (2006).

## I

### AC 28039

### A

The defendant first claims that the court improperly entered certain financial orders. Specifically, he argues that the court had insufficient evidence before it (1) to order him to obtain medical and life insurance, (2) to find that the plaintiff was unable to work and (3) to find that he had an earning capacity of $1000 per week.[4] We agree with the defendant as to his first claim of error.

---

[1] The defendant additionally claims that the court improperly ordered (1) lifetime alimony in the amount of $325 per week in favor of the plaintiff and (2) that he pay the plaintiff's obligation to the Social Security Administration. Other than setting forth these claims in the statement of the issues portion of his brief, the defendant devotes no further attention to them. The defendant's failure to brief these claims results in our deeming them abandoned. See *Rosier* v. *Rosier*, 103 Conn. App. 338, 340 n.2, 928 A.2d 1228 ("We are not required to review issues that have been improperly presented to this court

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Finan* v. *Finan*, 100 Conn. App. 297, 300, 918 A.2d 910, rev'd on other grounds, 287 Conn. 491, 949 A.2d 468 (2008). With that principle in mind, we address the defendant's claims in turn.

1

The defendant claims that the court abused its discretion by ordering him to obtain medical and life insurance without evidence as to its cost and availability. In particular, he maintains that, at the time of the order, he had no medical or life insurance policy in effect and no evidence was introduced at trial as to their potential cost or availability. We agree.

"An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage. . . . Such an order, however, must have a reasonable basis in the evidence. . . . We have held that it is reversible error for the court to order a party to obtain new or additional life insurance without evidence of the availability and cost of that insurance." (Citation omitted; internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 486, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004); see also *Quindazzi* v. *Quindazzi*, 56 Conn. App.

through an inadequate brief. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]), cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

336, 338, 742 A.2d 838 (2000); *Lake* v. *Lake*, 49 Conn. App. 89, 92, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998). The same principle applies to an order to obtain medical insurance. *Lake* v. *Lake*, supra, 93–94.

After thoroughly reviewing the record, we find that there was no evidence before the court of the availability or cost of life insurance to the defendant. The only reference to life insurance was the defendant's testimony during the dissolution trial that he "didn't believe [he] had any life insurance." As to medical insurance, the defendant testified that medical insurance would be available through his employer after he had been working there for four months. At the time of the trial, he had been working for that employer for three months. There was no evidence presented, however, concerning the cost of his employer's medical insurance program. Without sufficient evidence, the court was not in a position to evaluate the ability of the defendant to comply with the order to obtain and to maintain life insurance for himself and medical insurance for his daughter. Without knowing the cost of such insurance, the court entered other financial orders that may be inappropriate, that is, too high or too low depending on the funds required to obtain such insurance. Under these circumstances, we must conclude that the court's orders regarding insurance lack a reasonable basis in the facts.

Because the financial orders in an action for dissolution of marriage are of necessity interwoven and because the rendering of a judgment in an action for the dissolution of marriage is "a carefully crafted mosaic"; *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984); we must remand the case to the trial court for a new trial on all financial matters. See *Quindazzi* v. *Quindazzi*, supra, 56 Conn. App. 339. Because of our conclusion that the financial orders entered in this case must be retried, it is appropriate for us to give guidance on related issues that are likely to recur on

retrial. See *Allison* v. *Manetta*, 284 Conn. 389, 402, 933 A.2d 1197 (2007). For that reason, we turn our attention to the defendant's other claims concerning the court's financial orders.[5]

## 2

The defendant next claims that the court had insufficient evidence before it to find that the plaintiff was unable to work. We disagree.

The court found, following the August 23, 2006 trial, that "[t]he plaintiff is just shy of her forty-fifth birthday. She is in very poor health, and suffers from multiple sclerosis, although the defendant stated that he believes she is no longer suffering from said ailment due to her receiving acupuncture. She operated the couple's catering business with the defendant for most of the marriage. She did not reveal any other skills. She is currently receiving social security disability [benefits], which has been reduced due to the defendant, or the defendant's father, reporting some gambling income to the state . . . which has in turn reduced her benefits. There was no evidence to indicate that she could do any other work." The plaintiff testified at trial about her experience with multiple sclerosis and how it had affected her life generally, as well as her ability to work. The defendant also cross-examined her about prescription medication she had been taking to treat her condition. The record further reveals that on July 11, 2006, the plaintiff filed a financial affidavit listing her weekly social security income.

The defendant argues that the court had insufficient evidence before it to find the plaintiff unable to work because "there was no evidence as to the frequency of

---

[5] We note that neither party briefed or argued the question of whether any statutory or regulatory provision allowed or required the court to enter orders concerning health or life insurance, regardless of evidence of cost, nor did either party address the question whether any statutory or regulatory provision affected the burden of production or proof on the issue. We accordingly express no opinion on these issues.

treatment for multiple sclerosis, the name of her treating physician, whether any of her prescription medication was related to multiple sclerosis, the severity of multiple sclerosis [or] whether multiple sclerosis was the cause of her claimed symptoms." To support his argument, the defendant cites *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 783 A.2d 1157 (2001). In *Tevolini*, this court concluded that the trial court had abused its discretion when it presumed that the defendant was unable to work *solely* because she qualified for social security disability benefits without any further evidence of her disability presented at trial. Id., 28–31. When the plaintiff attempted to contest the defendant's claim at trial with his evidence, the court refused him that opportunity; it also denied his motion to have the defendant undergo a physical examination. Id., 19–20. This court further concluded that "because the defendant placed her health at issue in her claim for alimony, the plaintiff then had a right under [General Statutes] § 46b-82 to be heard and to offer evidence to refute that claim. That right to be heard, to be meaningful, included, inter alia, the right not only to argument, but also to present evidence at the trial regarding that issue." *Tevolini* v. *Tevolini*, supra, 24.

The circumstances of *Tevolini* are distinguishable from those in the present case. Here, the plaintiff offered testimonial evidence about the state of her health in addition to listing the receipt of social security disability benefits on her financial affidavit. She testified about having multiple sclerosis and how it had affected her life and, specifically, her ability to work. Furthermore, unlike in *Tevolini*, the defendant in this case was not prevented from introducing evidence concerning the plaintiff's disability. On the contrary, he testified about his belief that the plaintiff's multiple sclerosis had been cured by acupuncture. In light of the testimony and evidence presented at trial, we conclude

that there was sufficient evidence before the court for it to determine that the plaintiff was unable to work.

### 3

We next address the defendant's claim that there was insufficient evidence to support the court's finding that he has an earning capacity of $1000 per week. We are not persuaded.

The court found, following the August 23, 2006 trial, that "[b]ased upon the credible testimony of the plaintiff, and other credible evidence offered to the court, he is a skilled carpenter. The court previously found his earning capacity to be $1000 per week, and this court finds his earning capacity at $1000 per week." The plaintiff testified at trial that the defendant had been a skilled carpenter for at least twenty-six years, had worked extensively for his father renovating houses, had worked for Electric Boat earning approximately $1000 per week and had worked for a company on Fishers Island, which is near the eastern Connecticut coastline, earning more than $1000 per week. The plaintiff's brother, Fred Anderson, and a longtime family friend, Vicky Mather, also testified that the defendant was a skilled carpenter who had worked for his father as a carpenter for many years. Anderson also testified that the defendant was paid "under the table" by his father when the renovated houses were sold.

"In a marital dissolution proceeding, the court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [T]he

court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings." (Citation omitted; internal quotation marks omitted.) *Dees* v. *Dees*, 92 Conn. App. 812, 816, 887 A.2d 429 (2006).

The defendant argues that the plaintiff's testimony regarding his work history is misleading. In support of that argument, he refers to his testimony that he merely performed maintenance duties for his father and only temporarily was employed at Electric Boat in a training program that he did not complete. The defendant's argument is undermined by the court's determination that "[t]he defendant was not credible as to almost all of his testimony. Although he indicated on numerous occasions that he wanted the truth to come out, he continually changed his testimony, and it was difficult for the court to determine what, if anything, he said was in fact the truth. The plaintiff, on the other hand, appeared credible, and the court makes that finding." "It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 519–20, 914 A.2d 1058 (2007). The court is therefore free to reject testimony it does not find credible. *Emanuelson* v. *Emanuelson*, 26 Conn. App. 527, 532, 602 A.2d 609 (1992). The defendant's argument in this regard fails because it is based primarily on his testimony, which the court found not credible.

The defendant further argues that the court's reliance on its previous determination as to his earning capacity was clearly erroneous in light of his social security

statement, which was offered into evidence at trial. The defendant contends that the yearly income figures listed on his social security statement prove his assertion that he was not a long-term employee of Electric Boat earning $1000 per week. Although relevant, the length of the defendant's employment at Electric Boat was but one piece of evidence before the court relating to his earning capacity. Also before the court was the testimony of the plaintiff and Anderson that the defendant was a skilled carpenter who received money from his father in exchange for his work renovating his father's houses. Anderson also specifically stated that the money received was "under the table." We conclude that there was sufficient evidence before the court to support its finding that the defendant was capable of earning $1000 per week.

B

The defendant next claims that the court abused its discretion when it ordered that the plaintiff retain sole custody of the parties' minor child without reasonable evidence of the child's best interests. We disagree.

The guiding principle in determining custody is the best interest of the child. "In making or modifying any order [with respect to custody or visitation] . . . the court shall consider the best interests of the child . . . ." General Statutes § 46b-56 (c); see *Schult* v. *Schult*, 241 Conn. 767, 777, 699 A.2d 134 (1997). "Among the various factors the court may consider when determining the best interest of the child are the parties' parenting skills . . . the child's emotional ties to each parent . . . the psychological instability of the parent and whether the child is in a stable and loving environment." (Citations omitted.) *Janik* v. *Janik*, 61 Conn. App. 175, 181, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001); see also General Statutes § 46b-56 (c) (enumerating factors to be considered). "In reaching a decision as to what is in the best

interests of a child, the court is vested with broad discretion and its ruling will be reversed only upon a showing that some legal principle or right has been violated or that the discretion has been abused." (Internal quotation marks omitted.) *Stahl* v. *Bayliss*, 98 Conn. App. 63, 68, 907 A.2d 139, cert. denied, 280 Conn. 945, 912 A.2d 477 (2006).

The essence of the defendant's custody argument is that there was scant evidence before the court concerning several of the factors enumerated in § 46b-56 (c). The language of § 46b-56 (c), however, does not compel the consideration of any particular factor or factors when determining the best interest of a child. See General Statutes § 46b-56 (c) ("[i]n making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so *may consider, but shall not be limited to,* one or more of the following factors" [emphasis added]). Rather, the court is free to consider the factors it determines to be most appropriate given the facts of each individual case. Therefore, the argument that there was insufficient evidence before the court as to specific factors under § 46b-56 (c) is unavailing as long as there is adequate support in the record for the custody determination.

We conclude that the court did, in fact, properly consider the best interest of the child in its award of sole custody to the plaintiff. The court found, following the trial, that the defendant's father had evicted the plaintiff and the minor child from the marital home, which was owned by the defendant's father. Both of the parties' testimony indicates that the defendant, at the least, knew about his father's intention to evict the plaintiff and the minor child, yet did nothing. The court's findings and the plaintiff's testimony indicate that the defendant has a problem with anger and hostility. The plaintiff also testified that the defendant had taken the minor

child to a family court proceeding without her knowledge. In light of the testimony of both the plaintiff and the defendant, as well as the court's conclusions concerning all of the evidence before it, we cannot conclude that the court abused its discretion. The evidence was sufficient for the court to find that it was in the best interest of the minor child for the plaintiff to have sole custody, with the defendant having reasonable visitation rights.

## C

The defendant next claims that he "was denied procedural due process when the court denied his motion for a continuance . . . ." Specifically, the defendant argues that because he was incapable of representing himself, the court's custody and financial orders constituted an unconstitutional interference with his right to raise his children and to his property. We are not persuaded.

Immediately before the trial began on August 23, 2006, the court inquired whether the defendant had counsel or was representing himself. The defendant responded that he was not representing himself and that he had contacted an attorney who had not yet returned his call. The court noted that no attorney had contacted the court or filed an appearance on behalf of the defendant and, further, that the defendant had not requested a continuance until that morning. The court then denied the motion for a continuance, and the defendant proceeded pro se at the trial. The defendant preserved his objection to the court's denial but stated no grounds for his objection other than his belief that the plaintiff's counsel was "railroading" him.

Because the defendant did not assert a constitutional claim before the court and does not seek review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we employ the abuse of

discretion standard in reviewing the court's refusal to grant his motion for a continuance and, in doing so, conclude that the court did not abuse its discretion.[6] See *Kelly* v. *Kelly*, 85 Conn. App. 794, 799, 859 A.2d 60 (2004) (holding that abuse of discretion standard is appropriate standard of review of defendant's claim that court's refusal to grant her motion for continuance was constitutional violation because defendant neither asserted constitutional claim before trial court nor sought review of unpreserved claim pursuant to *Golding*).

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citations omitted.) *Ungar* v. *Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964). "[I]f the reasons given for the continuance do not support any interference with [a] specific constitutional right, the [reviewing] court's analysis will revolve around whether the trial court abused its discretion." *In re Shaquanna M.*, 61 Conn. App. 592, 602, 767 A.2d 155 (2001); see also *Foster* v. *Foster*, 84 Conn. App. 311, 316–17, 853 A.2d 588 (2004).

"Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . .

---

[6] Cf. *Foster* v. *Foster*, 84 Conn. App. 311, 316–18, 853 A.2d 588 (2004) (employing *Golding* review upon request of appellant regarding claim that denial of continuance constituted due process violation).

Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed." (Citation omitted.) *In re Shaquanna M.*, supra, 61 Conn. App. 604.

Our Supreme Court has "articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Internal quotation marks omitted.) *State* v. *Rivera*, 268 Conn. 351, 379, 844 A.2d 191 (2004).

In the present case, the defendant requested a continuance the morning the trial was to begin. The court noted, however, following the defendant's motion for a continuance, that the case had been pending for almost two years and that the attorney the defendant alleged he had contacted had neither contacted the court nor filed an appearance. The record also reflects that the defendant was represented by counsel until February 14, 2006, when his counsel's motion to withdraw appearance was granted. "We are especially hesitant to find an abuse of discretion when the motion is made on the day of trial. . . . Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." (Internal quotation marks omitted.) *O'Connell* v. *O'Connell*, 101 Conn. App.

516, 526, 922 A.2d 293 (2007). Because the defendant had adequate notice that trial was approaching and waited until the last possible moment to request a continuance to obtain counsel, we conclude that the court's denial of his request for a continuance was not arbitrary and was not an abuse of discretion.

## D

We next address the defendant's claim that the trial was not fair and impartial because he was incapable of representing himself. Specifically, the defendant argues that because the court failed to raise the issue of his competency sua sponte, he was denied due process of law. We decline to review the defendant's unpreserved claim.

The defendant did not raise any objection to the trial court proceedings on the ground that he believed he was incapable of representing himself. There were scant, if any, allusions to the defendant's competency at trial. Our review of the record reveals that the only possible such allusions were, first, the defendant's testimony that he did not understand the word "gratuitous" when it was used by the plaintiff's counsel. Second, the defendant stated, "I can't read, and I can't write," in response to a question posed by the plaintiff's counsel regarding a job application.[7]

---

[7] This statement is contradicted by the defendant's testimony, as well as by exhibits introduced at trial. Exhibits introduced at trial included the defendant's handwritten financial affidavit and a handwritten letter he wrote to the department of revenue services.

The following colloquy also occurred at trial:

"[The Plaintiff's Counsel]: . . . [I]s that what the document says?

"[The Defendant]: Where would you want me to read that?

"[The Plaintiff's Counsel]: Right by your left thumb, the last paragraph.

"[The Defendant]: This is something that [the plaintiff] made up, and I'm . . .

"[The Plaintiff's Counsel]: Is that what the document says?

"[The Defendant]: I have been working with my father for the last four years.

"[The Plaintiff's Counsel]: Okay.

"[The Defendant]: Yep.

"When a party raises a claim for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine as provided by Practice Book § 60-5, or the doctrine set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]." (Internal quotation marks omitted.) *Irizarry* v. *Irizarry*, 90 Conn. App. 340, 343, 876 A.2d 593 (2005). In his appellate brief, however, the plaintiff has not sought review under either of those doctrines. Although the defendant appeared pro se at trial, and we allow pro se litigants some latitude; see *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 861, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005); we have found nothing in the record that necessarily would have alerted the court to the defendant's objecting to the trial proceedings because he believed he was incapable of representing himself. "As this court has previously noted, it is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) *Irizarry* v. *Irizarry*, supra, 343. Accordingly, we decline to review the defendant's unpreserved claim of error.

## II

### AC 28839

### A

The defendant next claims that court improperly found him in contempt of court and established a purge amount on the basis of an erroneous arrearage. The defendant argues that because there was no arrearage at the time the motion for contempt was filed, the court improperly found him in contempt on the basis of arrearages accrued beyond the date the motion was filed and improperly established a purge amount on the

"[The Plaintiff's Counsel]: All right.
"[The Defendant]: That's what it says."

basis of those later arrearages. The defendant further argues that finding him in contempt on the basis of arrearages not in existence at the time the motion for contempt was filed defeats the purpose of civil contempt, which is coercive, rather than punitive. We are not persuaded.[8]

The essence of the defendant's argument is that contempt was found and a purge amount established for a time period not alleged in the motion for contempt. "[T]he interpretation of pleadings is always a question of law for the court. . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [A pleading] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Citation omitted;

---

[8] We note that as to the defendant's claim of error regarding the court's contempt finding, the record does not contain a memorandum of decision or a signed transcript of the court's oral decision in compliance with Practice Book § 64-1. When the record does not contain a memorandum of decision or signed transcript of the court's oral decision, this court has declined to review the claims on appeal because the record is inadequate for review. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607–608, 710 A.2d 190 (1998). When there is an unsigned transcript on file in connection with the appeal, this court may review the claims if the transcript adequately reveals the court's findings and conclusions in connection with its decision. *Tisdale* v. *Riverside Cemetery Assn.*, 78 Conn. App. 250, 254 n.5, 826 A.2d 232, cert. denied, 266 Conn. 909, 832 A.2d 74 (2003). Here, the record contains a court order as quoted from the March 23, 2007 hearing, as well as an unsigned transcript containing the court's findings and conclusions concerning its contempt finding. We will, therefore, review the defendant's claim on appeal.

internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 312–13, 892 A.2d 318 (2006).

This court in *Gil* addressed a similar claim regarding the allegations contained in a motion for contempt. In that case, the plaintiff claimed that the court improperly found her in contempt for acts and time periods that were not pleaded in the defendant's motion for contempt. Id., 311. In response to the plaintiff's claim, this court noted that "[t]he defendant's motion for contempt recites that the 'plaintiff . . . has disobeyed the court order in the following ways . . . . From 2000 to present, the plaintiff has shortened my hours of visitation. At other times, I have not received my visitation at all . . . .' Read broadly and realistically, as well as in the context of this dispute, the motion encompassed a continuing course of conduct theory. The court issued its original order in April, 2000. The defendant's motion clearly alleged that the plaintiff had engaged in a continuous course of contemptuous conduct from the inception of the order to the date of filing, with no indication that such conduct would cease absent the court exercising its coercive power. The plaintiff cannot complain now that she was not on notice that the court would find her in contempt for the allegedly contemptuous conduct that continued even after the motion was filed." Id., 313.

We find little difference between the circumstances in *Gil* and those in the present case. The plaintiff's November 1, 2006 amended motion for contempt first recites the court's August 23, 2006 financial orders and then states that "[s]ince that time, the defendant has failed and refused to abide by said orders of the court." Read broadly and realistically, as well within the context of the heavily disputed financial orders in this case, the plaintiff's motion in this case also encompassed a continuing course of conduct theory. Furthermore, the record reveals that the court already had found the

defendant in contempt on October 2, 2006, for his failure to comply with the court's August 23, 2006 financial orders. We conclude that the plaintiff's motion pleaded a continuous course of conduct and, therefore, that the court's contempt finding and corresponding purge amount were not at odds with the allegations contained in the motion.[9]

We add that the defendant's assertion is "contrary to both common sense and the well settled principle that pleadings must be construed broadly and realistically, rather than narrowly and technically." *Gil* v. *Gil*, supra, 94 Conn. App. 314. "When a party has drafted a motion for contempt that may reasonably be read to include a continuing course of conduct theory, imposing a requirement that the party file additional motions, pleading essentially the same facts, until the original motion is adjudicated wastes the resources of both the court and the filing party. In addition, it requires a hypertechnical interpretation and an exceptionally formalistic application of due process requirements." Id., 314 n.6.[10]

B

The defendant next claims that the trial court was biased against him and his father. We disagree.[11]

---

[9] We note additionally that on March 23, 2007, the court found that the defendant had the ability to pay alimony and child support and, therefore, was in wilful contempt of the court's financial orders. We further note that our reversal of the financial orders in part I does not, by itself, require reversal of the court's contempt finding. See *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 148, 496 A.2d 476 (1985) ("[w]e emphasize again that the court orders must be obeyed; there is no privilege to disobey a court's order because the alleged contemnor believes that it is invalid").

[10] Because we conclude that the court's contempt finding did not run astray of the allegations in the plaintiff's motion, we need not address the defendant's further assertion that because the contempt finding went beyond the allegations, it was improperly punitive in nature.

[11] We note that the defendant's briefing of this claim merely contains a list of references to the transcript of the March 23, 2007 hearing that allegedly support his claim of partiality. The defendant provides no legal authority or analysis to support his claim. We reiterate that analysis, rather than mere

"Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3 (c) (1) [of the Code of Judicial Conduct] provides in relevant part: A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . .

"To prevail on [his] claim of a violation of this canon, the [defendant] need not show actual bias. The [defendant] has met [his] burden if [he] can prove that the conduct in question gave rise to a reasonable appearance of impropriety." (Internal quotation marks omitted.) *Lucas* v. *Lucas*, 88 Conn. App. 246, 258, 869 A.2d 239 (2005).

The defendant asserts that "the court's failure to forestall the plaintiff's counsel from making repeated comments about [the] defendant's credibility, over the repeated objections of the defendant's counsel, is indicative of the bias shown by the court against the defendant." Although he cites several passages from the March 23, 2007 hearing that purportedly support that assertion, the defendant fails to explain how comments made by the plaintiff's counsel signify bias on the part of the court. The defendant has not met the burden of proof required to prevail on a claim of judicial impropriety, and we find no merit to this claim.

C

The defendant finally claims that the court improperly awarded the plaintiff attorney's fees. We conclude that the record is inadequate to review this claim.

abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. *Misata* v. *Con-Way Transportation Services, Inc.*, 106 Conn. App. 736, 740 n.4, 943 A.2d 537 (2008).

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . *Koizim* v. *Koizim*, 181 Conn. 492, 501, 435 A.2d 1030 (1980). An exception to the rule announced in *Koizim* is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders. . . . Whether to allow counsel fees [under General Statutes §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, supra, 83 Conn. App. 488–89.

The record does not contain a memorandum of decision or a transcript signed by the court setting forth the court's findings of fact and conclusions of law, as required by Practice Book § 64-1. We cannot review whether the award was proper because the record does not reveal the court's reasoning, specifically, whether or to what extent it considered the parties' ability to pay, as well as the criteria set forth in §§ 46b-62 and 46b-82. "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.)

*Moreira* v. *Moreira*, 105 Conn. App. 637, 641, 938 A.2d 1289 (2008). In the present case, neither party requested articulation from the court. Because the defendant has failed to provide this court with a sufficient record, we decline to review the issue of whether the court improperly awarded the plaintiff attorney's fees.

On the appeal designated AC 28039, the judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues in accordance with law; the judgment is affirmed in all other respects. The judgment in AC 28839 is affirmed.

In this opinion the other judges concurred.