******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# D. K. *v.* D. F.*
# (AC 47860)

Moll, Westbrook and Pellegrino, Js.**

*Syllabus*

The defendant, whose marriage to the plaintiff had previously been dissolved, appealed from the trial court's judgment denying his motion to modify custody of the parties' minor children and to allow him visitation. The defendant claimed, inter alia, that the court improperly concluded that joint legal custody and visitation was not in the best interests of the children. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion for modification of custody and visitation, as the trial court considered many factors in determining whether modification of custody and visitation was in the children's best interests and, in the absence of evidence to the contrary, which was not present in this case, this court presumed that the trial court properly weighed all the evidence before it.

The trial court properly articulated its basis for concluding that modification of custody and visitation was not in the children's best interests pursuant to the statute (§ 46b-56), as the court stated that it had considered all of the statutory factors set out in § 46b-56 (c) and it was not required to consider any particular factors or to assign weight to the factors that it considered.

The trial court did not impermissibly delegate its judicial authority to the plaintiff by giving her discretion to decide the nature and scope of the defendant's visitation rights, as the court's initial custody order in the dissolution judgment granted the plaintiff sole legal custody of the children and did not grant the defendant any visitation rights, and the fact that the court left open the possibility of visits at the discretion of the plaintiff did not transform the court's decision-making into impermissible delegation.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** This appeal originally was argued before a panel of this court consisting of Judges Prescott, Moll and Westbrook. Thereafter, Judge Pellegrino was added to the panel in place of Judge Prescott, who did not participate in the decision of the case. Judge Pellegrino has read the briefs and appendices and listened to a recording of oral argument prior to participating in this decision.

This court declined to review the defendant's inadequately briefed claim that the trial court failed to apply § 46b-56 (g) when it denied his motion for modification.

Argued February 14—officially released September 9, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Waterbury and tried to the court, *Ficeto, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Rapillo, J.*, denied the defendant's motion for modification of custody and visitation, and the defendant appealed to this court. *Affirmed.*

*D. F.*, self-represented, the appellant (defendant).

*Opinion*

WESTBROOK, J. In this postdissolution matter, the defendant, D. F., appeals from the trial court's denial of his postjudgment motion for modification of custody and visitation.[1] Although the self-represented defendant's appellate brief is not a model of clarity, we construe his claims to be that the court improperly (1) concluded that joint legal custody and visitation is not in the children's best interests pursuant to General Statutes § 46b-56, (2) delegated its judicial authority to the plaintiff, D. K., by giving her discretion to decide the nature and scope of the defendant's visitation rights, and (3) failed to apply § 46b-56 (g). We disagree and, accordingly, affirm the judgment of the court.

The following facts, which are undisputed in the record, and procedural history are relevant to this appeal. The defendant and the plaintiff were married on December 16, 2014, and they have two minor children

[1] The plaintiff, D. K., did not file a brief with this court. We therefore decide the appeal on the basis of the record and the defendant's brief and oral argument. See *Batista* v. *Cortes*, 203 Conn. App. 365, 366 n.1, 248 A.3d 763 (2021).

together, E and F. E was born in February, 2016, and F was born in June, 2022.

In July, 2022, the defendant was arrested following a domestic violence incident, and the criminal court subsequently issued a protective order prohibiting the defendant from contacting the plaintiff. Later that month, the plaintiff alleged that the defendant repeatedly attempted to contact her through text messages, emails, and phone calls. As a result, on August 1, 2022, the state obtained a warrant to arrest the defendant for, inter alia, violating a protective order in violation of General Statutes § 53a-223 (criminal matter). On August 2, 2022, the defendant was arrested, and, on August 3, 2022, the criminal court, under a new docket number, issued another protective order prohibiting the defendant from contacting the plaintiff.

In August, 2022, after the defendant had been arrested, the plaintiff initiated dissolution proceedings against the defendant (family matter). In the family matter, the plaintiff filed a motion for custody of the parties' minor children. The defendant filed an objection to the plaintiff's motion, arguing that the court should deny her motion and, instead, grant him sole custody of the children. The plaintiff filed proposed orders that provided, inter alia, that she be given sole legal and physical custody of the children. In December, 2022, the family court dissolved the parties' marriage and ordered that the plaintiff have sole legal and physical custody of their minor children. The court did not order visitation for the defendant. The court also approved the plaintiff's proposed orders and attached them to the judgment.

On April 4, 2023, in the criminal matter, the defendant, pursuant to a plea agreement, pleaded guilty to criminal violation of a protective order. On June 27, 2023, the court, *Schwartz, J.*, sentenced the defendant to eighteen months of incarceration and issued a standing

criminal protective order (protective order) that was to remain in effect until April 4, 2048. The protective order, inter alia, prohibits the defendant from contacting the plaintiff. It also provided that "[c]ontact with [F] . . . [was] permissible if approved by [the] family court." The defendant completed his sentence and was released from prison on February 1, 2024.

In February, 2024, the defendant filed in the family matter a postjudgment motion for modification of custody and visitation, seeking joint custody of and visitation with his children. The family court subsequently ordered the defendant to participate in a parenting education program, which he completed.

On April 26, 2024, in the criminal matter, the defendant filed a motion to modify the protective order, asking the court to terminate the protective order so that he could develop a relationship with the plaintiff that would be beneficial for their children. On May 23, 2024, the defendant filed a supplemental motion to modify the protective order, requesting that the court terminate or modify the protective order to "allow the defendant [to have] contact with [the plaintiff] strictly within the scope of the interests of the children according to the approved . . . parenting plan . . . ." In his supplemental motion, the defendant argued that the "protective order is a significant impediment for restoring and developing a normal relationship between the defendant and the children."

On June 3, 2024, the criminal court held a hearing on the defendant's motion to modify the protective order.[2] The court thereafter issued an order denying

---

[2] At the hearing, the following colloquy took place between the criminal court and the defendant concerning the family matter:

"The Court: All right, well, have you gone to family court and looked to have custody of your children?

"The Defendant: Yes, as I mentioned, we're scheduled for [a hearing] . . . .

"The Court: Okay. And there's nothing in the [protective order] that prevents you from having contact with your children, right?

the defendant's motion to modify the protective order, and the defendant appealed from that decision.[3]

On July 24, 2024, the family court, *Rapillo, J.*, held a hearing on the defendant's motion for modification of custody and visitation. The plaintiff was not present.[4] At the hearing, the following colloquy took place between the court and the defendant:

"The Court: So, you filed a motion to modify. Understand that with a motion to modify, the court can't make any orders that I don't find to be in the child's best interest. I know under the judgment file, it gives the [plaintiff] sole legal custody and doesn't make any orders with regard to visitation.

"The Defendant: Except that they live with [the plaintiff] [and] it becomes really difficult to contact them. . . .

"The Court: . . . As far as your children, there's nothing in [the protective] order that says you can't contact your children. But I get that if [the plaintiff] has sole custody and you can't contact her, it's very difficult for you to have any relationship with your children. . . . But the real place to have this argument is in family court, not here. And if you file your motion and [the family court] say[s] that the standing criminal protective order is an issue for [the court] . . . then come back here, and you can talk to me. But as its stands right now, there's nothing preventing you, by this court's order, from having a relationship [with your children]. So, I'd say talk to family court and work it out there. But I'm going to deny your motion to modify [the protective order] at this time. . . .

"The Defendant: And I can return . . . if the family court decide[s] that . . . the [protective order] is [an] impediment? . . .

"The Court: . . . What I'm saying is go to family court, ask to have contact with your children, and if the judge says well, you can't because of my order, then you can come back and you can tell me that. But I wouldn't tell any judge in family court that I'm willing to do anything. Because as of right now, all I'm doing is denying your motion."

[3] Contemporaneously with this opinion, this court issued a memorandum decision affirming the judgment of the criminal court denying the defendant's motion to modify the protective order. See *State* v. *Denis F.*, 235 Conn. App. 901,      A.3d      (2025).

[4] The defendant was unable to locate the plaintiff's residence for the purpose of serving her with notice of the hearing. After several attempts to serve notice on the plaintiff, the court ordered that the defendant serve a notice by publication. Notice was subsequently published in the Legal Notices section on the Judicial Branch website from June 5 through 19, 2024.

"The Defendant: No, there is nothing.

"The Court: Right, because she has sole legal custody, so that means it's up to her. That's what sole legal custody means. So, you filed a motion to modify. What is it that you are looking [for], and why do you believe that would be in the children's best interest[s]?"

The defendant thereafter argued that joint legal custody and visitation is in the children's best interests because he has a good relationship with E and he has concerns about the plaintiff's parenting. He additionally argued that there had been a substantial change in circumstances because his incarceration was the basis for awarding the plaintiff sole legal custody, and he is no longer incarcerated. The court asked the defendant whether he had engaged in services or therapy since he had been released from incarceration, and the defendant responded that he had completed a parenting education program. The court also asked the defendant when he had last seen his children, which the defendant explained was before he was incarcerated. The defendant additionally explained to the court that the protective order allows him to contact F if the family court approves. The following exchange then took place between the court and the defendant:

"The Court: You haven't had any contact [with the children]. You're basically asking to assume full control over their lives for kids that [you] haven't had contact with in a number of years. . . . I will find that there's been a change in circumstances since you've been released from prison, but I can't make a finding today that . . . changing the orders would be in the kids' best interest[s] . . . . This is based on what the record shows would be in the kids' best interest[s]. So, I'm going to deny the motion to modify, and I would suggest that, before you file another one, you get yourself

engaged in some sort of therapy . . . that will hope-fully give you some insight and be able to think about what would be in the kids' best interest[s]. . . .

"The Defendant: Can I have a visit? . . . Can I contact them?

"The Court: For now, I'm not going to order that, no.

"The Defendant: Why?

"The Court: Because I don't think it would be in the kids' best interest[s], and that's what the court has to consider."

Later that day, the court issued an order denying the defendant's motion for modification of custody and visitation. This appeal followed.

After filing the present appeal, the defendant, pursuant to Practice Book § 66-5, filed a motion for articulation. In his motion for articulation, the defendant argued that the family court failed to "state the reasons upon which the court rejected the postjudgment motion for modification" pursuant to General Statutes § 46b-56a (b).[5] He also argued that the court "failed to undertake all available measures to locate [the plaintiff] to be served with the notice, such as: ask the plaintiff's attorney, contact relatives, [and] contact current and previous employers." He requested that the court articulate: (1) "the statutory authority the court relie[d] upon in denying the postjudgment motion for modification of the sole custody into [a] joint custody and visitation"; and (2) "the statutory authority the court relie[d] upon

_____

[5] General Statutes § 46b-56a (b) provides: "There shall be a presumption, affecting the burden of proof, that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage. If the court declines to enter an order awarding joint custody pursuant to this subsection, the court shall state in its decision the reasons for denial of an award of joint custody."

in disregarding to resort to all available means to locate an individual to be served.”

On August 28, 2024, the court issued an order, which provides: “After hearing testimony from the [defendant] and considering all the statutory factors set out in . . . § 46b-56 (c), the court determined by a preponderance of the evidence that a modification of the orders would not be in the best interests of the minor children. The court declines to articulate on the [defendant’s] second request related to efforts to locate the [plaintiff]. The statutes and case law do not place a duty on the court to locate parties. The [defendant] was afforded ample opportunity to effectuate service and effective service was accomplished.” We turn now to the defendant’s claims on appeal.

I

The defendant first claims that the family court improperly concluded that joint legal custody and visitation is not in the children’s best interests pursuant to § 46b-56.[6] Specifically, he argues that the court failed

---

[6] General Statutes § 46b-56 provides in relevant part: “(a) In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make or modify any proper order regarding the custody, care, education, visitation and support of the children . . . . [T]he court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . .

“(b) In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. Such orders may include, but shall not be limited to: (1) Approval of a parental responsibility plan agreed to by the parents pursuant to section 46b-56a; (2) the award of joint parental responsibility of a minor child to both parents, which shall include (A) provisions for residential arrangements with each parent in accordance with the needs of the child and the parents, and (B) provisions for consultation between the parents and for the making of major decisions regarding the child’s health, education and religious upbringing; (3) the award of sole custody to one parent with appropriate parenting time for

to (1) consider evidence regarding the plaintiff's parenting or (2) articulate which factors it considered pursuant to § 46b-56 (c). We are not persuaded.

We begin by setting forth the relevant principles of law and our standard of review. "[Section] 46b-56 bestows upon the trial court the statutory authority to modify an order of custody or visitation. The statute directs the court to consider the best interests of the

the noncustodial parent where sole custody is in the best interests of the child; or (4) any other custody arrangements as the court may determine to be in the best interests of the child.

"(c) In making or modifying any order . . . the court shall consider the best interests of the child, and in doing so, may consider, but shall not be limited to, one or more of the following factors: (1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence . . . has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected . . . and (17) whether the party satisfactorily completed participation in a parenting education program . . . . The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision. . . ."

child and, while not requiring the court to assign weight to any of the factors that it considers, sets forth seventeen enumerated factors that the court may consider with respect to the modification. General Statutes § 46b-56 (c).

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [T]he trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties [firsthand] and is therefore in the best position to assess the circumstances . . . in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence. . . . In employing our abuse of discretion standard, [t]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the

evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"Before modifying a custody order, a court must satisfy two requirements. First, modification of a custody award must be based upon either a material change [in] circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child. . . . Second, the court shall consider the best interests of the child and in doing so may consider [the] several factors [set forth in § 46b-56 (c)]." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Thomas* v. *Cleary*, 229 Conn. App. 15, 26–28, 326 A.3d 1109 (2024). "In considering whether to modify visitation orders, as opposed to custody orders, a court is not required to find as a threshold matter that a change in circumstances has occurred. . . . Instead, [i]n modifying an order concerning visitation, the trial court shall be guided by the best interests of the child . . . ." (Internal quotation marks omitted.) *J. Y.* v. *M. R.*, 215 Conn. App. 648, 658–59, 283 A.3d 520 (2022).

In the present case, the court found that there had been a material change of circumstances since the initial custody order because the defendant, who was incarcerated at the time of the initial custody and visitation order, had been released from prison. The court found, however, that modification of custody and visitation was not in the children's best interests because the defendant had not had contact with his children since before he was incarcerated, and, since he had been released from prison, he had not engaged in any

therapy or services other than the court-ordered parent-ing education program.

The defendant does not argue that any of the court's factual findings are clearly erroneous. Rather, he argues that the court "failed to give weight to the factual issues presented by [him], particularly, to the facts [showing] that the [plaintiff] has repeatedly exhibited signs of hostile behavior toward the children including attempts to cause physical damage to the children and causing mental harm to [E]." In support of this argument, he contends that "the court refused to accept into evidence [his] written statement where [he] listed factual circum-stances that might have led the court to reconsider sole custody on the grounds of the best interest[s] of the children." We disagree.

There is no indication in the record that the defendant offered or that the court refused to accept any written statement by the defendant concerning the plaintiff's parenting. At the hearing on the defendant's motion, he stated: "[Y]ou have my postjudgment motion for modification. I listed there things that, in my opinion, [raise] serious concern[s] about, you know, [the plain-tiff's] real and genuine attitude [toward] the children." The defendant's motion for modification, however, did not include or attach any written statements concerning the plaintiff's parenting. In fact, the defendant admits, in his appellate brief, that "the [alleged] circumstances had been written in the statement which *had not been attached to the case*." (Emphasis added.)

Moreover, there is no indication that the court did *not* consider the evidence regarding the plaintiff's par-enting. At the hearing on the defendant's motion for modification, the defendant testified as follows: "First of all, [the plaintiff] likes to drink. Uh, second of all, she did many things that would have questioned her love [for] the children. Putting (indiscernible) in the

legs, feeding junk food, uh, not preparing food for the school as it's supposed to be, not dressing right, not feeding her right, not changing the water. So, many things that shows . . . her attitude. She had these kids in order to have [an] advantage against me, to manipulate me. And during [our] entire time together, she created [a] very toxic environment that has really serious influence on me . . . ."

"[T]he trier [of fact] is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed. . . . [W]e are not justified in finding error upon pure assumptions as to what the court may have done. . . . We cannot assume that the court's conclusions were reached without due weight having been given to the evidence presented and the facts found. . . . Unless the contrary appears, this court will assume that the court acted properly." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 229, 145 A.3d 362 (2016), cert. denied, 324 Conn. 905, 153 A.3d 653 (2017); see also *Watson Real Estate, LLC* v. *Woodland Ridge, LLC*, 187 Conn. App. 282, 294 n.11, 202 A.3d 1033 (2019) ("[i]t is difficult . . . for an appellant successfully to challenge a fact finder's consideration and weighing of evidence . . . [as] we . . . are entitled to presume that the trial court acted properly and considered all the evidence" (internal quotation marks omitted)). The court may consider many factors in determining whether modification of custody and visitation is in the children's best interests and, in the absence of evidence to the contrary, we presume that the court properly weighed all the evidence before it.

The defendant additionally argues that the court improperly failed to articulate which of the factors set forth in § 46b-56 (c) it considered in concluding that

modification of custody and visitation was not in the children's best interests. We disagree.

Although § 46b-56 (c) provides that the court "shall articulate the basis for its decision," the statute also states that "[t]he court is not required to assign any weight to any of the factors that it considers . . . ." This court has further explained that the trial court is not required to consider *all* of the factors set forth in § 46b-56 (c). See *In re Paulo T.*, 213 Conn. App. 858, 875, 279 A.3d 766 (2022) ("the court considered and balanced the most relevant factors set forth in § 46b-56 (c) in accordance with our law"), aff'd, 347 Conn. 311, 297 A.3d 194 (2023); *Weaver* v. *Sena*, 199 Conn. App. 852, 864, 238 A.3d 103 (2020) (holding that court did not abuse its discretion by focusing on certain § 46b-56 (c) factors in best interest analysis); *Watrous* v. *Watrous*, 108 Conn. App. 813, 825, 949 A.2d 557 (2008) (explaining that language of § 46b-56 (c) does not compel consideration of any particular factor or factors when determining best interests of children).

In the present case, the court stated, in response to the defendant's motion for articulation, that it considered "all the statutory factors set out in [§] 46b-56 (c) . . . ." At the hearing on the defendant's motion for modification, the court indicated that it afforded significant weight to the fact that the defendant had not had contact with the children since before his incarceration and had not engaged in therapy or services since his release from prison. Notably, the court suggested that the defendant should engage in therapy to gain "insight and be able to think about" the children's best interests before he files another motion for modification of custody and visitation.[7] As the court is not required to consider any particular factors or assign weight to the

---

[7] The defendant is not precluded from filing another motion for modification of custody and/or visitation. See Practice Book § 25-26.

factors that it considered, we conclude that the court properly articulated its basis for concluding that modification of custody and visitation is not in the children's best interests pursuant to § 46b-56. The court, therefore, did not abuse its discretion in denying the motion for modification.

## II

The defendant next claims that the family court improperly delegated its judicial authority to the plaintiff by giving her discretion to decide the nature and scope of the defendant's visitation rights. Specifically, the defendant contends that the court "misinterpreted the law, particularly . . . § 46b-56 (a) by stating that: 'because [the plaintiff] has sole legal custody . . . that means it [is] up to her . . . to decide the [defendant's] visitation rights.' " We disagree.

We begin with the standard of review and the relevant legal principles. "Whether the trial court improperly delegated its judicial authority is a legal question over which we have plenary review. . . .

"It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to [issue] any order or [to render a] judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Citation omitted; internal quotation marks omitted.) *R. H.* v. *M. H.*, 350 Conn. 432, 440, 324 A.3d 720 (2024).

"[T]he statutory language [of § 46b-56] itself precludes a trial court from delegating decision-making authority over whether a parent has visitation rights to anyone who is not a judge. . . . Only the trial court can modify its prior order regarding visitation. With respect to child custody and visitation orders, § 46b-56 grants the trial court continuing jurisdiction to make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . according to the court's perception of the best interests of the child. . . . This judicial responsibility cannot be delegated, nor can the parties abrogate it by agreement. . . . In the final analysis, the court retains jurisdiction to determine and advance the best interests of the child. . . . [A] trial court improperly delegates its judicial authority [under § 46b-56] when that court removes itself entirely from the decision-making process." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 441–42.

Our Supreme Court has differentiated among three scenarios concerning a trial court's delegation of its judicial authority under § 46b-56: (1) the trial court "plainly decide[s] that [a parent] should not have any *right* to custody or visitation," but "[leaves] open the possibility of voluntary visits at the discretion of [a third party]"; (emphasis in original) *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 172, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018); (2) the trial court grants a noncustodial parent visitation rights and issues an order "allowing [a third party] to alter, change, or modify the [parent's] visitation *schedule* while not permitting [the third party] to reduce, suspend, or terminate the [parent's] *access* to their child"; (emphasis added) *R. H.* v. *M. H.*, supra, 350 Conn. 444; and (3) the trial court grants a noncustodial parent visitation rights and issues an order allowing a third party to "dictate the scope of [the parent's] contact with [the child] . . . ." (Internal

quotation marks omitted.) Id., 443. Our Supreme Court has indicated that the first two scenarios do not constitute an impermissible delegation of judicial authority; see id., 444–45; but that the third scenario is an improper delegation of the trial court's judicial authority because "a trial court cannot remove itself entirely from the decision-making process" and authorize a third party to "modify [a noncustodial parent's] *right* to visitation." (Emphasis in original; internal quotation marks omitted.) Id., 444. The present case concerns the first scenario.

In *Zilkha* v. *Zilkha*, supra, 180 Conn. App. 143, the trial court's postdissolution order limited the defendant's visitation with his teenage children to voluntary visitation at their discretion. Id., 165. On appeal, the defendant claimed that the trial court impermissibly delegated its judicial authority to the children in giving them sole discretion over his visitation. Id., 168. This court rejected the defendant's claim, stating: "[R]ather than delegating its responsibility, the court exercised its authority and met its obligation to decide issues of custody and visitation by denying the defendant's motions [for modification]. This adjudication by the court was the *antithesis of a delegation* because it plainly decided that the defendant should not have any *right* to custody or visitation. The fact that the court's order left open the possibility of voluntary visits at the discretion of the teenagers does not transform the court's decision-making into impermissible delegation." (Emphasis altered.) Id., 172.

The present case is similar to *Zilkha*. Here, the court's initial custody order granted the plaintiff sole legal custody of the children and did not grant the defendant *any visitation rights*. At the hearing on the defendant's motion for modification, the court explained that, under the initial custody and visitation order, the defendant has no right to visitation and, therefore, visitation is at

the discretion of the plaintiff. The court thereafter denied the defendant's motion for modification, leaving the initial custody and visitation order in place. Because the court, like the trial court in *Zilkha*, decided that the defendant should not have any *right* to custody or visitation, the fact that the court left open the possibility of visits at the discretion of the plaintiff does not transform the court's decision-making into impermissible delegation. See id. Thus, we conclude that the court did not impermissibly delegate its judicial authority to the plaintiff.

## III

Finally, the defendant claims that the family court failed to apply § 46b-56 (g).[8] We conclude that this claim is inadequately briefed and, therefore, we decline to consider it.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . .

"In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized. . . . We are mindful that [i]t is the established policy of the

---

[8] General Statutes § 46b-56 (g) provides: "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child, unless otherwise ordered by the court for good cause shown."

Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Thomas* v. *Cleary*, supra, 229 Conn. App. 35–36.

In the present case, the defendant's appellate brief contains two references to § 46b-56 (g). First, the issues presented section of the defendant's appellate brief identifies the following issue: "Whether the [family] court committed legal and factual errors as it applied . . . [§] 46b-56 (g)?" Second, the argument section provides in relevant part: "The [family] court failed to apply [§] 46b-56 (g). 'The noncustodial parent retains a statutory right of access to the academic, medical, hospital or other health records of the child[ren] unless it is otherwise ordered by the court for the good cause shown.' " In his appellate brief, the defendant merely recites the language of § 46b-56 (g) and asserts, in a single conclusory statement, that the court failed to apply that statutory provision. He does not provide any legal authority, facts, or analysis to support his claim that the court failed to apply § 46b-56 (g) or how such failure rendered improper the court's denial of his motion for modification.

Although we "allow the defendant some latitude as a self-represented litigant," the sparsity and lack of substantive argument render his brief "inadequate for us to conduct any meaningful review of" this claim. (Internal quotation marks omitted.) *Thomas* v. *Cleary*, supra, 229 Conn. App. 37; see also *C. B.* v. *S. B.*, 211 Conn. App. 628, 630–31, 273 A.3d 271 (2022) (declining to review

claim when briefing was sparse, conclusory, disorga-
nized, and confusing). Because the defendant has failed
to challenge, in any meaningful way, the court's denial
of his motion for modification on the ground that the
court failed to apply § 46b-56 (g), we decline to review
this claim.

The judgment is affirmed.

In this opinion the other judges concurred.