BRUCE KELLY *v.* FRANCINE KELLY
(AC 24563)

Bishop, West and DiPentima, Js.

Submitted on briefs September 16—officially released November 2, 2004

*Francine Kelly*, pro se, the appellant (defendant), filed a brief.

*Nancy Aldrich* filed a brief for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant, Francine Kelly, appeals from the judgment of the trial court dissolving her seventeen year marriage to the plaintiff, Bruce Kelly, and making certain financial, custodial and visitation orders related thereto. On appeal, the defendant claims that the court deprived her of her constitutional right to be present and to give testimony at trial by (1) improperly moving her trial date from September, 2003, to August, 2003, with only two weeks notice and (2) failing to rule on her motion for a continuance. We conclude that because of the procedural irregularities in this case, the court abused its discretion and, accordingly, reverse the judgment.

The following facts and procedural history are relevant to our resolution of the appeal. The defendant resides in Arizona, the plaintiff in Connecticut. The plaintiff, through his attorney, filed a complaint for the dissolution of the parties' marriage on October 16, 2002. The defendant filed a pro se appearance on or about

October 27, 2002. At the end of March, 2003, attorney Sheila K. Rosenstein filed an appearance in lieu of the defendant's appearance. In April, 2003, Rosenstein requested a continuance of the trial date, which was scheduled for May 16, 2003, because financial affidavits had not yet been exchanged and discovery had not commenced. At the end of May, Rosenstein filed a motion to withdraw from her representation of the defendant; that motion was granted on June 26, 2003.[1] After a special master's conference on June 6, 2003, which Rosenstein attended, the special master issued a report in which he stated that the session was unsuccessful and that a status conference was needed on financial and discovery issues. On June 16, 2003, the court received a letter from the defendant explaining that she was aware of her attorney's decision to withdraw and that she would now be acting pro se and wished to be informed of all proceedings. With notice dated July 3, 2003, the court informed the defendant that trial was to begin on September 12, 2003. Subsequently, with new notice dated July 21, 2003, the court informed the defendant that trial was now set to begin on August 12, 2003,[2] which notice allegedly was received by the defendant in Arizona, via regular mail, either on July 25 or July 28, 2003. The defendant filed a motion for a

[1] Although the defendant properly was notified by Rosenstein that she sought to withdraw as the defendant's attorney, it is unclear from the record whether the defendant was notified by the court that the motion had been granted. The court file contains a facsimile from the defendant to the court, dated June 2, 2003, in which she explained that Rosenstein withdrew from her case, that she was seeking a new attorney and that she could not attend the pretrial conference scheduled for June 6, 2003. The notes written on the letter by the clerk's office indicate that the defendant was e-mailed at 11:50 a.m. on June 3, 2003, by the clerk's office and that Rosenstein's motion to withdraw had not been filed or granted. We do note, however, that the motion was stamped by the clerk's office with the date of May 27, 2003, and that the court later granted the motion on June 26, 2003.

[2] The appendix to the defendant's brief contains copies of the court's notices concerning the trial date. Copies of those notices, however, are not contained in the court's file.

continuance in which she explained that she was acting pro se, was living in Arizona and was having trouble getting discovery concerning the value of the plaintiff's pension and, as a result, was not prepared to go to trial. She asked that the trial be continued until October, 2003. At approximately the same time, the defendant also sent interrogatories to the plaintiff, most of which were answered prior to trial, but the plaintiff refused to provide the pension valuation information that the defendant had requested. The court did not rule on the defendant's motion for a continuance, but proceeded with the trial on August 12, 2003, which occurred slightly more than two weeks following the court's notification to the defendant of the change in the trial date.[3] The defendant did not appear at trial.

In its August 14, 2003 memorandum of decision, the court ordered the marriage dissolved and made, inter alia, the following orders: The parties will share joint custody of their fourteen year old son, with primary physical custody to the plaintiff; the defendant shall pay child support of $115 per week; the plaintiff shall maintain the child's health insurance; the parties' Arizona property, in which the defendant lives, shall be sold, and liens, mortgages, etc., shall be deducted and

---

[3] The July 21, 2003 notice stated: "All parties of record are hereby noticed that the above case is scheduled for trial on August 12, 2003 before the Hon. E. Bassick. Correspondence Re: this file should not be directed to Judge Bassick or his secretary. Correspondence from any party other than the parties of record &/or their attorney will not be accepted by the court."

In contravention of the direction given to not direct correspondence to the judge, the defendant sent a letter, dated July 29, 2003, addressed to the judge, explaining her situation, asking for assistance in obtaining the pension valuation information she sought through discovery and renewing her request for a continuance "even past the date of September 12, 2003 . . . ." The clerk's office made the following handwritten notation on the letter on August 4, 2003: "Ms. Kelly, you have been previously informed that correspondence to the court/judge would not be accepted or filed. Enclosures have been discarded." The letter then was mailed to the defendant, and a copy is contained in the appendix to her brief.

several enumerated adjustments made, and the remaining proceeds shall be divided equally; each party shall retain their individual personal property; the parties shall split the value of the plaintiff's pension equally to the date of the dissolution at such time as the pension becomes fully vested;[4] the parties shall retain their own debts, shall file a joint tax return and shall divide the refund equally; the plaintiff shall maintain life insurance, naming the child the irrevocable beneficiary; and the parties shall share all school fees and other related expenses of the child's college education on the basis of their respective financial abilities to do so at the time such expenses are incurred. This appeal followed.

The defendant's claim on appeal essentially is that the procedural irregularities particular to her case entitled her to a continuance at least to the previously set trial date of September 12, 2003, which was contained in the July 3, 2003 notice from the court, and that the court's failure to grant her motion for a continuance violated her right to due process under the fourteenth amendment to the United States constitution,[5] specifically, her right to be heard on the issues of custody, child support and property distribution. The plaintiff does not address the defendant's claim that this matter is of constitutional magnitude. Instead, he responds that this court should analyze the claim pursuant to the abuse of discretion standard. Specifically, he argues

[4] There is no indication in the court's memorandum of decision of the value it placed on the plaintiff's pension. "We note that, although not expressly required by statute, a trial court, when utilizing a method to ascertain the value of a pension, should reach that value on the record. Casting the judgment in specific amounts will make the result more comprehensible for the litigants and will facilitate appellate review as often as such review may become necessary." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 804, 663 A.2d 365 (1995).

[5] The fourteenth amendment to the United States constitution provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

that the court did not abuse its discretion in going forward with the trial because the defendant had been informed verbally by the clerk's office of the correct trial date and also had been informed that no continuances would be granted.[6] Because the defendant did not assert a constitutional claim before the trial court and does not seek review of her unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[7] we employ the abuse of discretion standard in reviewing the court's refusal to grant her motion for a continuance and, in doing so, conclude that the court did abuse its discretion.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. " (Citations omitted.) *Ungar* v. *Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964). "[I]f the reasons given for the continuance do not support

[6] The plaintiff cites the remarks of the case flow coordinator to support that argument, which were as follows: "It is my understanding that [the defendant] was well aware that the trial was proceeding today, that there would be no more continuances." We fail to see how the "understanding" of the case flow coordinator demonstrates that the defendant had received sufficient and timely notice of the August, 2003 trial date.

The plaintiff's counsel also argues that the defendant received additional notice of the August, 2003 trial date because "the [p]laintiff's attorney sent the defendant notice of the trial by letter dated July 14, 2003 . . . [which is attached to the appellate brief as exhibit two]." The defendant characterizes this statement as an "erroneous" representation to the court. Upon our review of this exhibit, we must agree with the defendant. The July 14, 2003 letter from counsel, attached as exhibit two, is addressed to the *plaintiff*, Bruce Kelly, with no notation that a copy was sent to the defendant.

[7] Cf. *Foster* v. *Foster*, 84 Conn. App. 311, 316–17, 853 A.2d 588 (2004) (employing *Golding* review on request of appellant).

any interference with [a] specific constitutional right, the [reviewing] court's analysis will revolve around whether the trial court abused its discretion." *In re Shaquanna M.*, 61 Conn. App. 592, 602, 767 A.2d 155 (2001); see also *State* v. *Coleman*, 83 Conn. App. 672, 687, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004).

"Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . . Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed." (Citation omitted.) *In re Shaquanna M.*, supra, 61 Conn. App. 604.

Our Supreme Court has "articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Internal quotation marks omitted.) *State* v. *Rivera*, 268 Conn. 351, 379, 844 A.2d 191 (2004).

In this case, the out-of-state, pro se defendant received written notification from the court, dated July 3, 2003, that trial was to commence on September 12,

2003. The court had granted her attorney's motion to withdraw only one week earlier. Less than three weeks later, in a notice dated July 21, 2003, the court informed the defendant that trial would commence on August 12, 2003. Additionally, before moving the trial to an earlier date, on April 9, 2003, the defendant's counsel had explained to the court that no financial affidavits had been exchanged and that discovery had not commenced in the case. On June 6, 2003, the special master also had reported that a status conference was necessary because of unresolved financial and discovery issues, and in the defendant's motion and correspondence to the court at the end of July, 2003, the defendant had explained that she still was having much difficulty receiving pension information from the plaintiff. The defendant also attempted to explain to the court that she was not able to change her plans on such short notice, that she was seeking a new attorney and that she had not obtained the pension information that she sought from the plaintiff through discovery. Finally, on August 4, 2003, the clerk's office discarded documents from the pro se defendant and informed her that further correspondence from her "to the court/judge would not be accepted or filed." See footnote 3. We conclude that because of the particular procedural irregularities in this case, the court should have granted the defendant's motion for a continuance. Failure to do so was an abuse of discretion.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.