******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MONICA R. OVERLEY *v.* MARK S. OVERLEY
(AC 43249)

Bright, C. J., and Clark and Eveleigh, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
dissolving his marriage to the plaintiff and making certain orders regard-
ing the parties' finances and custody of the parties' three minor chil-
dren. *Held*:

1. This court declined to review the defendant's claim that the trial court
improperly awarded the marital home to the plaintiff without first award-
ing him a credit for the separate property he contributed to its purchase:
the defendant failed to distinctly raise at trial the claim that the funds
he withdrew from a trust to pay for the home were his separate property,
and, instead, had maintained that the funds were a marital liability,
and that the court was required to allocate that liability and the marital
home between the parties; moreover, although the plaintiff did not argue
that the defendant failed to preserve this claim, it would have been
manifestly unjust to both the plaintiff and the trial court to have permit-
ted the defendant to pursue this claim on appeal.

2. The trial court improperly ordered that the defendant may not, under
any circumstances, deduct alimony payments from his income for tax
purposes, which was consistent with recently enacted federal tax laws
but contravened the parties' prenuptial agreement; contrary to the plain-
tiff's argument, the defendant's claim that this order was improper was,
in part, preserved for appeal, because, although the defendant could
have articulated more fully to the trial court how it could have reconciled
the apparent conflict between the parties' agreement and the new federal
tax laws, both the plaintiff and the trial court had notice of the defen-
dant's claim, he consistently sought enforcement of the alimony provi-
sion of the parties' prenuptial agreement as written, he explained to the
court that alimony payments remained deductible in Puerto Rico where
he resided, and the plaintiff addressed the issue in her posttrial brief;
moreover, the defendant's additional, related claims were not raised at
trial and were, therefore, unreviewable on appeal; furthermore, the
court's order was overly broad in that it would prevent the defendant
from deducting his alimony payments in accordance with the parties'
prenuptial agreement even if his income tax obligations are governed
by the laws of a jurisdiction that would otherwise permit such deductions
and even if federal tax laws are amended in the future to permit such
deductions.

3. The trial court did not abuse its discretion in denying the defendant's
motion for a continuance to secure new counsel: the court's order was
reasonable given that the dissolution action had been pending for more
than two years and the defendant sought a continuance of up to three
months, less than one week before trial was scheduled to begin; more-
over, the court properly balanced the parties' competing interests and
reasonably concluded that the plaintiff's interest in a prompt and final
resolution of the matter outweighed any prejudice the defendant might
experience if he was required to proceed as a self-represented party,
particularly because the defendant had previously been represented by
two different attorneys who had each withdrawn on the ground of a
breakdown in the attorney-client relationship, and to grant a continuance
on the eve of trial could have resulted in a prolonged delay in a matter
involving the well-being of minor children.

Argued September 14—officially released December 28, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Fairfield; thereafter, the matter was transferred
to the Regional Family Trial Docket at Middletown;

subsequently, the court, *Hon. Gerard I. Adelman*, judge trial referee, denied the defendant's motion for a continuance; thereafter, the matter was tried to the court, *Hon. Gerard I. Adelman*, judge trial referee; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Affirmed in part; reversed in part; further proceedings*.

*Anthony A. Piazza*, with whom, on the brief, was *John H. Van Lenten*, for the appellant (defendant).

*Sarah E. Murray*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The defendant, Mark S. Overley, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Monica R. Overley. He claims that the court improperly (1) failed to award him a separate property credit for his contribution to the purchase of the marital home prior to distributing that property as a marital asset, (2) contravened the parties' prenuptial agreement governing the tax treatment of alimony payments he was ordered to pay the plaintiff, and (3) denied his request for a continuance to obtain new counsel. We disagree with the defendant's first and third claims but agree, in part, with his second claim. We therefore reverse in part and affirm in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 2006, the parties were married and established residence in New York. Prior to the marriage, they executed a prenuptial agreement (agreement). The agreement provides that, in the event of a marital dissolution, if the value of the marital assets do not exceed a specified amount and the parties are unable to agree upon an equitable division of the marital assets, either party may seek a distribution in court. The agreement includes a choice of law provision, which provides that it shall be interpreted and construed under the laws of New York. Additionally, it stipulates that the plaintiff is entitled to alimony. Under the agreement, alimony payments are to be taxable as income to the plaintiff and deductible from the defendant's income.

During the marriage, the parties moved from New York to Connecticut and had three children together. The defendant primarily worked in finance, but later formed two limited liability companies that raise capital for investment managers. The plaintiff did not work outside the home on a regular basis and assumed the majority of the childcare responsibilities. In 2014, the defendant informed the plaintiff that he wanted to move the family and his businesses to Puerto Rico to take advantage of its more favorable tax laws. The plaintiff strongly opposed the idea because of the community ties she and the children had developed in Connecticut.

In 2016, however, she agreed to relocate to Puerto Rico on a trial basis, on the condition that the parties buy a home in Connecticut where the family could return if the move proved unsuccessful. Consequently, the parties purchased a home in Westport. The defendant moved to Puerto Rico in May, 2016, and the plaintiff and their children joined him shortly thereafter.

In April, 2017, the plaintiff and the children moved back to Connecticut. The plaintiff commenced this dissolution action on April 25, 2017. Because the defendant continued to reside in Puerto Rico, a lengthy dispute followed regarding whether Puerto Rico or Connecticut

had jurisdiction to resolve the matters involving the parties' children. On July 27, 2018, the dispute was resolved in favor of Connecticut assuming jurisdiction over the child support and custody issues. Trial initially was scheduled to take place in November, 2018. The defendant was represented by counsel at that time. When the parties appeared for trial, however, the court, for administrative reasons, continued the trial and transferred the case to the Regional Family Trial Docket.

On May 7, 2019, less than one week before the rescheduled dissolution trial was to commence, the defendant's counsel moved to withdraw his appearance and for a continuance in order to provide the defendant time to secure replacement counsel. The next day, the defendant filed an appearance as a self-represented party. The court denied the motion for a continuance. At trial, on May 13, 2019, the defendant renewed his motion for a continuance to secure replacement counsel. After hearing from the defendant and the plaintiff, who was represented by counsel, the court denied the motion. The parties were the only witnesses at trial, and neither party contested the validity or enforceability of the agreement. After the conclusion of evidence, the court ordered the parties to submit posttrial briefs concerning alimony and the distribution of marital property. The defendant retained counsel, who appeared in the case and filed a posttrial brief on his behalf.

On July 11, 2019, the court issued its memorandum of decision dissolving the marriage. In its decision, the court ordered the defendant to quitclaim his interest in the marital home to the plaintiff and to pay alimony in the amount of $10,000 per month, terminating upon the death of either party, the plaintiff's remarriage, or July 1, 2028. Contrary to the parties' agreement, the court also ordered that the defendant's alimony payments shall be nondeductible from his income and nontaxable as income to the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court improperly awarded the marital home to the plaintiff without first awarding him a credit for the separate property he contributed to its purchase, which he claims is required under New York law. Our review of the record discloses that the defendant never raised this claim in the trial court. Accordingly, we decline to review it.

The following additional facts are relevant to our decision. The defendant is a cotrustee and beneficiary of a trust that was created prior to the marriage. To fund a $700,000 cash purchase of the marital home in Westport, the defendant withdrew $699,000 from the trust. At trial, the parties agreed that the defendant's interest in the trust is the defendant's separate property

and that, pursuant to the parties' agreement, the home was marital property because it was purchased during the marriage and title was in both parties' names.

Under the agreement, if the pretax value of marital assets did not exceed a certain amount in accordance with a formula set forth in the agreement and the parties were unable to agree upon a division of the marital assets, either party could ask a court to divide the marital assets in accordance with New York law. Both parties agreed, and the trial court found, that the value of the marital assets did not exceed the threshold amount set forth in the agreement and that they had not reached an agreement with respect to the division of marital assets. As a result, the court was required to divide the marital assets in accordance with New York law.[1]

The court found that the value of the home was $750,000 and that the total value of all marital assets equaled approximately $902,000. The home thus comprised the bulk of the parties' marital property. The defendant contended throughout the proceedings that he had borrowed the money used to purchase the home from the trust. Accordingly, in his financial affidavits, the defendant classified the $699,000 withdrawal from the trust as a marital liability. In his posttrial brief, the defendant argued that the money withdrawn from the trust was a joint liability and that the court should exercise its power of equitable distribution to order that the marital home be sold and the proceeds be used to satisfy that liability.[2] At trial, however, the defendant had also testified that, in the past, he had taken advances from the trust in the form of loans for the purpose of delaying or avoiding the tax consequences of distributions. The plaintiff asked the court to award her the home to maintain stability for the parties' children and contended that the trust loan was not a genuine debt but, rather, an advance against the defendant's future distributions from the trust.

In its memorandum of decision, the court ultimately found that the funds the defendant withdrew from the trust to buy the marital home were, in fact, "distributions called loans to avoid tax consequences."[3] Pursuant to New York's equitable distribution law, the court determined that the plaintiff should retain the home and ordered the defendant to quitclaim his rights and interest therein to the plaintiff, while the defendant "assumed responsibility—if any—for the loan from the [trust] used to purchase that property."

On appeal, the defendant characterizes the funds withdrawn from the trust to purchase the home as his separate property, not a marital liability, and claims for the first time that the court was required to award him a separate property credit in the amount of those funds prior to distributing the remaining value of the home as a marital asset. He argues that New York law entitles a party who contributes separate property toward the

purchase of a marital asset to a credit in the amount so contributed before marital property is distributed between the parties in a dissolution action. See, e.g., *Jacobi* v. *Jacobi*, 118 App. Div. 3d 1285, 1286, 988 N.Y.S.2d 339 (2014) (spouse entitled to credit for contribution of separate property toward purchase of marital home).

During oral argument, however, the defendant conceded that he never made this argument in the trial court. Our review of the record confirms that, throughout the dissolution proceedings, the defendant maintained that the funds he withdrew from the trust to pay for the home were a loan that constituted a marital liability, and that, in contrast to the separate property credit theory he advances on appeal, the court was required to allocate that liability and the marital home between the parties in accordance with New York's equitable distribution scheme. The court ultimately adopted that approach and, in the exercise of its substantial discretion; see, e.g., *Ragucci* v. *Ragucci*, 170 App. Div. 3d 1481, 1482, 96 N.Y.S.3d 736 (2019) ("[i]t is well settled that trial courts are granted substantial discretion in determining what distribution of marital property—including debt—will be equitable under all the circumstances" (internal quotation marks omitted)); awarded the plaintiff the marital home and assigned to the defendant the liability, if any, associated with the funds he withdrew from the trust to purchase the home.

"It is fundamental that claims of error must be distinctly raised and decided in the trial court." (Internal quotation marks omitted.) *DeChellis* v. *DeChellis*, 190 Conn. App. 853, 860, 213 A.3d 1, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019). "[A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 351–52, 999 A.2d. 713 (2010); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

Although the plaintiff has not argued that the defendant failed to preserve the separate property credit theory he has advanced before this court, we conclude that it would be manifestly unjust to both the plaintiff and the trial court to permit the defendant to pursue that claim in this appeal. "[A] party *cannot present a*

*case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would . . . [be] unfair both to the [court] and to the opposing party."* (Emphasis added; internal quotation marks omitted.) *State* v. *Rodriquez*, 192 Conn. App. 115, 119, 217 A.3d 21 (2019). "We will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of [him] or issues never clearly presented to [him]." (Internal quotation marks omitted.) *DiGiuseppe* v. *DiGiuseppe*, 174 Conn. App. 855, 864, 167 A.3d 411 (2017). Accordingly, we decline to review the defendant's claim that the court misapplied New York law when it failed to award him a separate property credit for his contribution to the purchase of the marital home.

## II

The defendant's second claim is that the court improperly contravened the parties' agreement when it ordered that he may not deduct for income tax purposes the alimony payments he was ordered to pay the plaintiff. The plaintiff counters that the defendant's claim is not reviewable because the defendant failed to raise this claim in the trial court and that, even if the issue is reviewable, the court properly severed the alimony tax provision from the agreement because it is unenforceable under the federal tax code. We conclude that the defendant's claim was raised at trial and, therefore, is reviewable. We also conclude that the court's order unconditionally prohibiting the defendant from deducting alimony payments from his income for tax purposes was overly broad to the extent that it purports (1) to preclude the defendant from taking such deductions if his income tax obligations are governed by the laws of a jurisdiction that permits such deductions, or (2) to preclude either party from seeking to enforce the agreement in the future if the federal tax laws are amended in a manner that permits enforcement of the agreement.

## A

We first address the plaintiff's argument that the defendant failed to preserve this claim. As we previously explained in part I of this opinion, in general, a party must distinctly raise a claim at trial to preserve the issue for appeal. See Practice Book § 60-5. "The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties." (Internal quotation marks omitted.) *Moyher* v. *Moyher*, 198 Conn. App. 334, 340, 232 A.3d 1212, cert. denied, 335 Conn. 965, 240 A.3d 284 (2020). "Thus, because the sine qua non of preservation is fair notice to the trial court . . . the determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain

whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Citation omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753–54, 66 A.3d 869 (2013).

In his December 20, 2017 answer and cross-complaint, the defendant demanded enforcement of the agreement. The agreement provided that alimony payments to the plaintiff "shall be includible in [the plaintiff's] income and deductible from [the defendant's] income for income tax purposes." Moreover, during the course of the trial, the court asked the defendant to explain whether he was proposing draft orders that permitted him to deduct alimony payments from his taxable income and how the recent changes to the federal tax laws repealing such deductions impacted his proposal.[4] The defendant responded that "in Puerto Rico, [alimony] still is deductible. Alimony comes off before you get to the taxable income number. So, there is no change in the . . . Puerto Rico tax code in respect to [my proposed orders]."

Although the defendant's posttrial brief did not specifically address what effect, if any, the federal tax law change had on the parties' agreement, the defendant did, in his answer and cross-complaint, and closing argument, urge the court to order alimony in accordance with the parties' agreement. The plaintiff argued, conversely, that the tax provision in the parties' agreement was without force and effect because alimony payments are no longer deductible due to the recent changes to the federal tax laws and that, consequently, the provision of the agreement permitting such deductions should be severed from the agreement.[5] In its memorandum of decision, the court discussed the recent changes to the federal tax laws, but did so only in the context of its analysis of a separate provision of the agreement concerning the amount of alimony to which the plaintiff was entitled under the agreement. Ultimately, the court ordered, without discussion, that "alimony shall be nontaxable to the plaintiff and nondeductible to the defendant."

On the basis of our review of the entire record, we conclude that, under the specific circumstances of this case, the defendant's claim concerning the tax treatment of his alimony payments was preserved because both the plaintiff and the court had notice of that claim. Throughout the proceedings, the defendant consistently sought enforcement of the parties' agreement as written. More significantly, in response to the court's question about recent changes to the federal tax laws, the defendant explained that alimony payments remained deductible in Puerto Rico, where he resided, and that, accordingly, the federal tax laws did not interfere with the enforcement of the agreement or the draft orders that he had proposed. Although the defendant

could have articulated more fully how the court could have reconciled the apparent conflict between the parties' agreement and the new federal tax laws, we conclude that the issue was preserved.[6]

B

Having determined that the defendant's claim is reviewable, we now address whether the court improperly prohibited him from deducting his alimony payments from his taxable income in any tax returns that he may file in the future. We first set forth the standard of review that governs our resolution of this claim. Although the choice of law provision in the parties' agreement provides that it "shall be interpreted, construed and governed under the laws of the state of New York," Connecticut law guides our resolution of all procedural issues, including the standard of review to be applied in an appeal from a Connecticut court's judgment of dissolution. See *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447, 165 A.3d 1137 (2017) (matters of substance are analyzed according to parties' choice of law provision but procedural issues are governed by Connecticut law).

"[A]lthough the court has broad equitable remedial powers in the area of marital dissolutions . . . our marital dissolution law is essentially a creature of, and governed by, statute. . . . The Superior Court's power to grant divorces and thereby dissolve marriages comes from statutory authority, and from such jurisdiction over divorce derives the court's jurisdiction to make and enforce orders . . . . Thus, it is well settled that judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Loughlin* v. *Loughlin*, 280 Conn. 632, 653–54, 910 A.2d 963 (2006).

As the court noted in its decision, Congress recently passed the Tax Cuts and Jobs Act (TCJA), which included certain changes to the provisions of the federal tax code governing the tax treatment of alimony payments. See footnote 4 of this opinion. Specifically, under the TCJA, alimony payments are no longer considered taxable income of the recipient and may not be deducted from income by the payor. We agree with the plaintiff that neither the parties' prenuptial agreement nor a decree of dissolution can supersede the federal tax code. See *Shenk* v. *C.I.R.*, 140 T.C. 200, 206 (2013) ("ultimately it is the Internal Revenue Code and not [s]tate court orders that determine one's eligibility to claim a deduction for [f]ederal income tax purposes");

*Lowe* v. *Commissioner of Internal Revenue*, T. C. Memo 2016-206, pp. 7–8, 112 T.C.M. (CCH) 514 (T.C. 2016) ("as we have consistently held, a taxpayer's eligibility for deductions is determined under [f]ederal law—specifically, the express terms of the Internal Revenue Code—and [s]tate courts cannot bind the Commissioner [of Internal Revenue] to any particular treatment of a taxpayer").

The claim that we have determined was preserved for our review is more narrow, however. That claim concerns whether the court should have entered orders that preserved for the defendant the ability to enjoy the benefits of the agreement to the extent permissible under the laws of the jurisdiction governing his income tax obligations. We agree with the defendant that the trial court's orders appear to preclude him from doing so.

The order at issue simply states, without reference to the parties' agreement, that "alimony shall be nontaxable to the plaintiff and nondeductible to the defendant." We presume, and on appeal the plaintiff contends, that the trial court entered this order to make it clear that the parties' respective tax obligations are to be governed by the recently enacted federal tax laws, not the conflicting provisions of the agreement. As written, however, the court's order would prevent the defendant from exercising his contractual right to deduct alimony payments in accordance with the agreement even if his income tax obligations are governed by the laws of a jurisdiction that would otherwise permit such deductions and even if federal tax laws are amended in the future to permit such deductions. The court provided no justification for that result, and we suspect that it did not intend to issue orders having that effect.

Accordingly, we conclude that the court improperly ordered that the defendant may not, under any circumstances, deduct alimony payments from his income for tax purposes. We, therefore, reverse the judgment of the court as to tax deductibility and remand the case with direction to enter a new order that the provision of the agreement as to deductibility shall apply so long as it does not conflict with the controlling law of any jurisdiction in which the parties file tax returns.[7]

### III

The defendant's final claim is that the court abused its discretion and denied him due process of law by arbitrarily denying his motion for a continuance to secure new counsel after his attorney withdrew from the case. We are not persuaded.

As an initial matter, we note that the defendant did not assert a constitutional claim before the trial court and does not seek review of such a claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773,

781, 120 A.3d 188 (2015). Rather, the defendant frames the issue in his brief as whether the court abused its discretion. As a result, we employ the abuse of discretion standard in reviewing the court's refusal to grant his motion for a continuance. See *Watrous* v. *Watrous*, 108 Conn. App. 813, 826–27, 949 A.2d 557 (2008) (citing *Kelly* v. *Kelly*, 85 Conn. App. 794, 799, 859 A.2d 60 (2004)).

"Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . . Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed. . . .

"Our Supreme Court has articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the [party's] personal responsibility for the timing of the request . . . ." (Citation omitted; internal quotation marks omitted.) *Kelly* v. *Kelly*, supra, 85 Conn. App. 800.

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis." (Internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, 193 Conn. App. 137, 169, 219 A.3d 400 (2019), aff'd, 337 Conn. 228, 253 A.3d 1 (2020). "[I]n order to establish reversible error in nonconstitutional claims, the [appellant] must prove both an abuse of discretion and harm . . . ." (Internal quotation marks omitted.) *Cunniffe* v. *Cunniffe*, 141 Conn. App. 227, 235, 60 A.3d 1051, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

The record reveals that the defendant was represented by counsel in this action from May 8, 2017, until February 14, 2019, when his first attorney filed a motion to withdraw her appearance because the attorney-client relationship had broken down irreparably.[8] The defendant subsequently secured new counsel, who filed an appearance on February 25, 2019. On May 7, 2019, less than one week before trial was scheduled to begin, the defendant's second attorney filed a motion to withdraw in which he, too, cited a breakdown in the attorney-client relationship and further stated that withdrawal

was necessary in order to comply with the Rules of Professional Conduct.

At the time that the second attorney moved to withdraw from the case, he also moved for a continuance to afford the defendant additional time to secure replacement counsel. The next day, however, the defendant filed an appearance as a self-represented party. The court issued a written order denying the request for a continuance, noting that trial was scheduled to commence the following Monday.[9] Trial commenced on May 13, 2019. Prior to the start of evidence, the defendant renewed his request for a continuance by way of an oral motion to the court on the grounds that he had been unsuccessful in securing new counsel and that he could not adequately represent his interests in the proceedings. When the court inquired as to the length of delay the defendant sought, the defendant responded that one attorney with whom he had spoken indicated needing at least three months to prepare for trial.

The court then heard from the plaintiff's counsel, who opposed any continuance of the trial. Counsel noted that the dissolution action had been filed more than two years earlier, had been litigated extensively during that time, and that the parties had been ready to proceed to trial six months earlier when the matter was postponed by the court. He also argued that the plaintiff would be prejudiced by any further delay because the defendant had accrued a substantial alimony arrearage and there was an outstanding motion for child support, pendente lite, which had been filed on May 26, 2017. The plaintiff's counsel further represented that the defendant had not been providing adequate child support and that out-of-pocket medical expenses, medical insurance, and fees for the children's extracurricular activities had gone unpaid.

After hearing from both parties, the court denied the defendant's motion for a continuance, stating: "Well . . . the national goal for dealing with cases involving divorce, certainly with children, is to resolve the matter within twelve months. Your case is some . . . 720 days past the return date. This is a matter that's been docketed for a considerable period of time. . . . [Y]our oral motion for continuance is . . . denied. We'll go forward. The [c]ourt will give you what latitude it can, but self-represented parties are required to follow the same rules and Practice Book obligations as . . . a licensed attorney." The case proceeded to trial with the defendant acting in a self-represented capacity. After the close of evidence but before the court rendered judgment, the defendant secured new counsel, who appeared and filed a posttrial brief on his behalf.

On the basis of our review of the entire record and the factors articulated by our Supreme Court; see *State* v. *Rivera*, 268 Conn. 351, 379, 844 A.2d 191 (2004); we

conclude that the court did not abuse its discretion when it denied the defendant's motion for a continuance. At the time of trial, this action had been pending for more than two years and had been heavily litigated. In his oral motion for a continuance on the first day of trial, the defendant informed the court that he might need a continuance of up to three months.

In deciding whether to grant the continuance, the court properly balanced the parties' competing interests. The court reasonably concluded that the plaintiff's interest in a prompt and final resolution of the matter outweighed any prejudice the defendant might experience if he was required to proceed as a self-represented party. That conclusion was neither arbitrary nor unreasonable, especially in light of the fact that two attorneys representing the defendant had withdrawn on the ground of a breakdown in the attorney-client relationship. Under such circumstances, it was not unreasonable for the court to conclude that granting a continuance on the eve of trial could have resulted in a prolonged delay in a matter involving the well-being of minor children. See, e.g., *Vossbrinck* v. *Vossbrinck*, 194 Conn. 229, 230–32, 478 A.2d 1011 (1984), cert. denied, 471 U.S. 1020, 105 S. Ct. 2048, 85 L. Ed. 2d 311 (1985) (court did not abuse its discretion in denying motion for continuance after granting attorney's motion to withdraw based on disagreements between defendant and counsel about how case should be litigated); *Bevilacqua* v. *Bevilacqua*, 201 Conn. App. 261, 266–69, 242 A.3d 542 (2020) (court did not abuse its discretion in denying motion for continuance in dissolution action involving children that had been pending for more than two years even though delays had been outside of parties' control); see also *Thode* v. *Thode*, 190 Conn. 694, 697, 462 A.2d 4 (1983) (court was "especially hesitant to find an abuse of discretion where the [trial] court ha[d] denied a motion for continuance made on the day of trial"); *Day* v. *Commissioner of Correction*, 118 Conn. App. 130, 134, 983 A.2d 869 (2009) (court did not abuse its discretion when it denied motion for continuance on first day of trial), cert. denied, 294 Conn. 930, 986 A.2d 1055 (2010).

Accordingly, we conclude that the defendant has failed to demonstrate that the court abused its discretion when it denied his motion for a continuance.[10]

The judgment is reversed only as to the order regarding the tax consequences of alimony payments, and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] New York is an equitable distribution state. See N.Y. Dom. Rel. Law § 236 (B) (5) (d) (McKinney 2020) (delineating fourteen factors court must weigh when allocating marital property).

[2] The defendant asserted and the court agreed that, under New York law, marital property includes both assets and liabilities. See, e.g., *Haggerty* v.

*Haggerty*, 169 App. Div. 3d 1388, 1390, 92 N.Y.S.3d 773 (2019).

[3] The defendant does not challenge the trial court's finding on appeal. The question of whether the funds were a loan or distribution does not alter our resolution of this claim.

[4] In 2017, Congress passed the Tax Cuts and Jobs Act (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017), which provides that, with respect to divorce decrees and separation agreements executed on or after December 31, 2018, a payor of alimony may not deduct such payments from taxable income and a recipient of alimony is not required to report the receipt of alimony payments as taxable income. See Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 11051, 131 Stat. 2054, 2089 (2017) (repealing 26 U.S.C. §§ 71 and 215). In divorce decrees and separation agreements executed prior to the effective date of the TCJA, a payor of alimony may deduct alimony payments from taxable income, in which case a recipient of alimony is required to report alimony as taxable income. 26 U.S.C. §§ 71 and 215 (2012).

[5] The parties' agreement contains a severability clause that provides: "In the event of a determination that any provision of this Agreement is without force and effect, the remaining provisions hereof shall not be affected thereby, and the obligations of the parties shall continue in full force and effect with respect to the performance of such remaining provisions."

[6] We limit our review, however, to the precise issue that was fairly before the trial court. In his brief to this court, the defendant additionally claims that the court's order improperly (1) precludes him from arguing to the Internal Revenue Service that the alimony at issue in this case is "grandfathered" under the Tax Cuts and Jobs Act; see footnote 4 of this opinion; and the agreement is therefore enforceable, and (2) contravenes the parties' agreement concerning how much alimony the plaintiff should receive because at the time the parties entered the agreement, they both understood and presumed that the alimony the plaintiff would receive would be taxable income. The defendant thus contends that the court's order results in an unexpected "windfall" to the plaintiff that is inconsistent with the agreement. Because the defendant did not raise either of these claims at trial, we decline to review them on appeal. Instead, we limit our review to the discrete claim that the court improperly contravened the parties' agreement when it ordered, without exception, that the defendant's alimony payments shall be nondeductible from his income for tax purposes.

[7] We further conclude that the order at issue is severable and does not require reconsideration of the court's other financial orders on remand. "A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question." (Internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 214, 61 A.3d 449 (2013). In the present case, the court's order precluding the defendant from deducting alimony payments from his taxable income, even if doing so is or becomes permissible under the laws of the jurisdiction governing his income tax obligations, is wholly independent of the court's other financial orders. Under the circumstances of this case, preserving for the defendant the *possibility* of deducting from his income the amount of alimony payments he makes has no bearing on the other financial orders the court issued and does not place the correctness of those orders in question.

[8] The hearing on the motion to withdraw was scheduled for February 28, 2019. It was marked off by the court because the parties failed to appear.

[9] A hearing regarding the motion to withdraw was scheduled to occur on May 10, 2019. The hearing on that motion was marked off after the defendant filed an appearance as a self-represented party.

[10] Because we conclude that the court did not abuse its discretion, it is unnecessary to consider whether its denial of the motion for a continuance was harmless error. We note, however, that the record provides little support for the defendant's claim that he was prejudiced at all, much less to an extent that would require reversal. The court was extremely accommodating toward the defendant at trial. During the course of the trial, the court patiently explained procedural matters and granted the defendant several lengthy recesses to prepare. It permitted the defendant to submit filings after the deadlines for doing so had passed and gave wide latitude to the defendant during his own direct testimony and cross-examination of the plaintiff. Nearly all of the exhibits the defendant offered into evidence were admitted as full exhibits. Perhaps most significantly, after the close of evidence, the defendant secured counsel, who raised issues and made legal arguments in a posttrial brief that was filed on his behalf. Although the

defendant makes a number of arguments about how he was prejudiced by virtue of having to proceed as a self-represented party at trial, his attempts to demonstrate how or to what extent his self-represented status caused any of those alleged harms are unpersuasive.

———————————————